IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

**PAUL GRAHAME MORGAN**                                                     **PLAINTIFF**

**V.**                                          **CIVIL ACTION NO. 2:07cv15-MTP**

**STATE OF MISSISSIPPI,** *et al.*                                      **DEFENDANTS**

**OPINION AND ORDER**

THIS MATTER is before the court on the Motions to Dismiss [45] [81] filed by Gwendolyn C. Chunn. Having reviewed the submissions of the parties and the applicable law, the court finds that the Motions [45] [81] should be GRANTED.

FACTUAL BACKGROUND

Plaintiff Paul Grahame Morgan is currently incarcerated in the South Mississippi Correctional Institution ("SMCI"), serving an eight-year sentence for two counts of the unlawful touching of a child and one count of child molestation.[1] Plaintiff, proceeding *pro se* and *in forma pauperis*, filed his Complaint [1] pursuant to 42 U.S.C. § 1983 on January 24, 2007. Plaintiff named approximately thirty-five defendants in his complaints and various amended complaints. Plaintiff alleged claims against the defendants in their official and individual capacities for the denial and/or delay of adequate medical treatment, improper conditions of confinement, violation of his freedom of religion, violation of his right to be free from illegal searches and seizures under the Fourth Amendment, denial of access to the courts, an inadequate Administrative Remedy Program ("ARP"), and violation of the Americans with Disabilities Act ("ADA"). The allegations in plaintiff's complaints occurred while he was housed in SMCI, Parchman, and Central Mississippi Correctional Facility ("CMCF"). Several claims and defendants have since

---

[1]*See* MDOC database, http://www.mdoc.state.ms.us/InmateDetails.asp?PassedId=53437.

been dismissed.  *See* Opinion and Order [120].

Plaintiff claims that defendant Gwendolyn C. Chunn, former volunteer President of the American Correctional Association ("ACA"), failed to train her employees to act, review, and inspect facilities (i.e., Parchman, CMCF, and SMCI) without deliberate indifference towards: the inmate's well being, safety and treatment; the overcrowding and double-racking dangers to inmates; the medical privacy of inmates; handicap accommodations; issuance of clothing and bedding supplies; medical services; pest control; and building maintenance.  Plaintiff further complains that the ACA consistently "passes" institutions despite the fact that they "rarely, if ever actually enter any buildings or medical units" for inspection.[2]  Plaintiff also alleges that the ACA employees have aided the perpetuation of a "fraudulent veneer of compliance" to the public as an institution in adherence with the law, which is deliberately indifferent and endangering to inmates.[3]  Plaintiff states that through the ACA's audits, ACA employees participate and promote the display and notation of interviewing inmates, but actually only interview inmates that are "hand-picked" to not speak ill of the institutions, furthering the "veneer" of compliance to the public.[4]  In his Amended Complaint [5], while not specifically mentioning Chunn, plaintiff alleges that the ACA auditors are "well aware as to what violations auditors refused, avoided, and were indifferent to citing that would result in U.S. Constitutional and ADA Title II violations to the plaintiff and other inmates."[5]

On June 29, 2007, Chunn filed her Motion to Dismiss [45].  In her motion, Chunn claims that plaintiff's claims against her must be dismissed for the following reasons: 1) plaintiff has not

---

[2]*See* Complaint [1] at ¶ 210.

[3]*See* Complaint [1] at ¶ 211.

[4]*Id.*

[5]*See* Amended Complaint [5] at ¶ 5.

alleged that she was acting under color of state or federal law as required by Section 1983; 2) Title II of the ADA does not apply to her; and 3) she is entitled to the protections of the federal Volunteer Protection Act (42 U.S.C. § 14501, *et seq.*) and its Mississippi counterpart (Miss. Code Ann. § 95-9-2). The plaintiff filed his Response [47] in opposition to the motion on or about July 18, 2007. Both parties subsequently filed several replies and rebuttals in support of their respective positions. *See* Chunn's Reply [48]; Plaintiff's Response [65]; Chunn's Second Reply [67]; and Plaintiff's Second Response [69]. On October 9, 2007, Chunn filed her Motion to Dismiss [81] Plaintiff's Second Amended Complaint. Plaintiff filed his Response [90] in opposition on or about October 29, 2007. Thereafter, Chunn filed her Reply [96] in support of the motion, and plaintiff filed his Response [103].

## STANDARD

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "[t]he complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true." *Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). However, in order to survive a motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007) (holding that "dismissal for failure to state a claim upon which relief may be granted *does not require* appearance, beyond a doubt, that plaintiff can prove no set of facts in support of claim that would entitle him to relief," abrogating *Conley v. Gibson*, 355 U.S. 41 (1957)) (emphasis added); *see also In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007).

Because Chunn has submitted matters outside the pleadings with her Motions to Dismiss or, in the Alternative, for Summary Judgment [59], the motion should be characterized as a motion for summary judgment. *See* Fed. R. Civ. P. 12(b); *Young v. Biggers*, 938 F.2d 565, 568

3

(5th Cir. 1991).  This court may grant summary judgment only if, viewing the facts in a light most favorable to the plaintiff, the defendant demonstrates that there is no genuine issue of material fact and that she is entitled to judgment as a matter of law.  *Woods v. Smith,* 60 F.3d 1161, 1164 (5th Cir. 1995).  If the defendant fails to discharge the burden of showing the absence of a genuine issue concerning any material fact, summary judgment must be denied.  *John v. Louisiana,* 757 F.2d 698, 708 (5th Cir. 1985).  The existence of an issue of material fact is a question of law that this court must decide, and in making that decision, it must "draw inferences most favorable to the party opposing the motion, and take care that no party will be improperly deprived of a trial of disputed factual issues."  *Id.* at 708, 712.

## ANALYSIS

### 1983 Claims

Plaintiff alleges various claims against defendant Chunn under Section 1983 as set forth above.  In her motion to dismiss, Chunn claims that neither she nor the ACA is a proper defendant under Section 1983 because they were not persons acting "under color of state law" as required by Section 1983.

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Cornish v. Corr. Servs. Corp.*, 402 F.2d 545, 549 (5th Cir. 2005) (internal quotations and citation omitted) ("Mere private conduct, no matter how discriminatory or wrongful" will not give rise to liability under Section 1983).  The Supreme Court has held that the alleged conduct causing the deprivation of a federal right must be "fairly attributable to the State."  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).  The Court set forth a two-part analysis for the "fair attribution" test:

4

> First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible. . . . Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.

*Lugar*, 457 U.S. at 937.

The Fifth Circuit has recognized three tests to determine whether a private party is acting under color of state law: the public function test, the state compulsion test, and the joint action or nexus test. *Bass v. Parkwood Hospital*, 180 F.3d 234, 241-42 (5th Cir. 1999). Under the public function test, a "private entity may be deemed a state actor when that entity performs a function which is traditionally the exclusive province of the state." *Bass*, 180 F.3d at 242 (internal quotations and citation omitted). The establishment and operation of ACA's voluntary accreditation program is not a function reserved exclusively to the State. No governmental entity "either requires that ACA operate its accreditation program or regulates such accreditation program."[6] Accordingly, neither Chunn nor the ACA are deemed State actors under the public function test.

Under the state compulsion test, "a State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Bass*, 180 F.3d at 242.. The state prison facilities have not exercised any coercive power over the ACA or Chunn, as the ACA's accreditation program is completely voluntary, and the State has no control or power of the ACA.[7] Likewise, "the ACA has no authority to require a

---

[6]*See* Affidavit [45-2] at ¶ 8.

[7]*See* Affidavit [45-2].

5

correctional facility to seek accreditation, to adopt any procedures or to change any existing procedures."[8]  Therefore, the ACA and Chunn are not deemed state actors under the state compulsion test.

Finally, under the nexus or joint action test, a private party may be deemed a state actor where the state has "so far insinuated itself into a position of interdependence with the [private actor] that it was a joint participant in the enterprise." *Id.*  The ACA is a private, non-profit, non-governmental, educational organization.[9]  As previously stated, the state facilities' decision to apply for accreditation through the ACA is completely voluntary, and the ACA cannot force the facilities to adopt or change any procedures because they are not in compliance with the ACA standards.[10]  Defendant Chunn correctly notes that a mere contractual relationship between a private entity and the state does not render the private entity a state actor.  *See Cornish v. Corr. Servs. Corp.*, 402 F.2d 545, 549 (5th Cir. 2005)  (internal quotations and citation omitted) (stating that the "[a]cts of ... private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts"); *see also Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 194 (1988) ("Neither [the university's] decision to adopt the NCAA's standards nor its minor role in their formulation is a sufficient reason for concluding that the NCAA was acting under color of Nevada law when it promulgated standards governing athlete recruitment, eligibility, and academic performance.").  Accordingly, the ACA and Chunn are not deemed to be state actors under the joint action or nexus test.

For the reasons stated above, the court finds that neither the ACA nor Chunn are deemed

---

[8]*See* Affidavit [45-2] at ¶ 7.

[9]*See* Affidavit [45-2].

[10]*See* Affidavit [45-2] at ¶ 7.

state actors under the three tests recognized by the Fifth Circuit.  Accordingly, the alleged conduct by Chunn and the ACA are not "fairly attributable to the State."  Therefore, Chunn is not a proper defendant under Section 1983, and plaintiff's claims against her should be dismissed.  *See Nash v. DeTella*, No. 00 C 2784, 1000 WL 1372864, at *(N.D. Ill. Sept. 22, 2000) (holding that the ACA was entitled to judgment as a matter of law on plaintiff's claims under Section 1983, reasoning that the "A.C.A., a private organization, cannot be held liable for the prison's having allegedly exposed the plaintiff to contaminated water, nor for accrediting the prison despite the existence of tainted water"); *see also McKeesport Hospital v. Accreditation Council for Graduate Med. Educ.*, 24 F.3d 519, 523-26 (3d. Cir. 1994) (holding that private accrediting body for graduate medical training programs was not a state actor for purposes of Section 1983 liability).

Moreover, defendant Chunn had no personal involvement with the ACA's inspection of Parchman, CMCF, or SMCI, or with their subsequent accreditation.[11]  The Fifth Circuit has held that "[p]ersonal involvement is an essential element of a civil rights action."  *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983).  Accordingly, plaintiff's claims against Chunn are further subject to dismissal on this basis.  *See Williams v. Am. Corr. Ass'n*, No. 1:06cv196LG-JMR, 2008 WL 244322, at *3, *5 (S.D. Miss. Jan. 27, 2008) (granting ACA's motion for summary judgment on plaintiff's claims under Section 1983, where plaintiff failed to establish that the ACA, who accredited the Harrison County Adult Detention Center, actively participated in the acts complained of, or implemented unconstitutional policies that resulted in injury, and finding that the ACA established that it was under no duty or obligation to train or supervise the facility's employees).

---

[11]*See* Affidavit [45-2] at ¶ 14.

ADA Claims

Plaintiff alleges a claim for violation of the ADA against defendant Chunn as set forth above. In her motion to dismiss, Chunn argues that plaintiff's ADA claim against her should be dismissed because neither she nor the ACA are proper defendants. In support of her argument, Chunn states that Title II of the ADA prohibits discrimination by a "public entity," and the ACA is a private actor, and not a public entity.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a **public entity**, or be subjected to discrimination by any such entity." 28 U.S.C. § 12132 (emphasis added). The term "public entity" is defined as "(A) any state or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) the National Railroad Passenger Corporation, and any commuter authority . . . ." 28 U.S.C. § 12132.

As set forth in Jeffrey Washington's affidavit, the ACA is a private, not-for-profit corporation organized under the laws of the State of New York, and is exempt from federal income taxation under section 501(c)(3) of the Internal Revenue Code.[12] The ACA maintains a private, non-governmental, voluntary accreditation program pursuant to which correctional facilities may apply for ACA accreditation.[13] The ACA is not required by the government or any quasi-governmental organization to operate its accreditation program, or to operate the program in a certain way.[14] Because the ACA is not a state or local government, an instrumentality of a

---

[12]*See* Affidavit [45-2].

[13]*Id.*

[14]*Id.*

8

state or local government, or a commuter authority, the court agrees that neither Chunn nor the ACA are proper defendants for plaintiff's claims under Title II of the ADA.

In his Response [47] to Chunn's motion, apparently conceding that Title II of the ADA does not apply to Chunn or the ACA, plaintiff claims that Title III of the ADA applies to Chunn and the ACA.[15] Title III of the ADA provides that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of **public accommodation** by any person who **owns, leases (or leases to) or operates** a place of public accommodation." 42 U.S.C. § 12182 (emphasis added).

While plaintiff is correct that some private entities may be considered "public accommodations" under Title III of the ADA, the ACA does not qualify as a "public accommodation" as defined by the Act. The private entities that are considered "public accommodations" under Title III are specifically set forth in twelve different categories of entities, and the ACA does not fit within any category identified in the definition.[16]

---

[15]*See* Response [47] at ¶ 12.

[16]Title III of the ADA defines "public accommodation" as follows:

The following private entities are considered public accommodations for purposes of this subchapter, if the operations of such entities affect commerce--

**(A)** an inn, hotel, motel, or other place of lodging, except for an establishment located within a building that contains not more than five rooms for rent or hire and that is actually occupied by the proprietor of such establishment as the residence of such proprietor;

**(B)** a restaurant, bar, or other establishment serving food or drink;

**(C)** a motion picture house, theater, concert hall, stadium, or other place of exhibition or entertainment;

**(D)** an auditorium, convention center, lecture hall, or other place of public gathering;

**(E)** a bakery, grocery store, clothing store, hardware store, shopping center, or

9

In his Response [47], plaintiff also implies that the state prison facilities accredited by the ACA identified herein constitute "public accommodations" under Title III. Even if the prison facilities did meet the definition of "public accommodation" under Title III, which they do not, Title III would still be inapplicable to the claims against Chunn and the ACA because they do not own, lease or operate the facilities. *See* 42 U.S.C. § 12182 ("No individual shall be discriminated against . . . by any person who **owns, leases (or leases to) or operates** a place of public accommodation.") (emphasis added).

Accordingly, because neither Chunn nor the ACA are proper defendants under Title II or Title III of the ADA for the reasons set forth above, plaintiff's claims against Chunn under the ADA should be dismissed.

## CONCLUSION

For the reasons stated above, the court finds that Gwendolyn Chunn's Motions to Dismiss

---

other sales or rental establishment;

**(F)** a laundromat, dry-cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, insurance office, professional office of a health care provider, hospital, or other service establishment;

**(G)** a terminal, depot, or other station used for specified public transportation;

**(H)** a museum, library, gallery, or other place of public display or collection;

**(I)** a park, zoo, amusement park, or other place of recreation;

**(J)** a nursery, elementary, secondary, undergraduate, or postgraduate private school, or other place of education;

**(K)** a day care center, senior citizen center, homeless shelter, food bank, adoption agency, or other social service center establishment; and

**(L)** a gymnasium, health spa, bowling alley, golf course, or other place of exercise or recreation.

42 U.S.C. § 12181(7).

[45] [81] should be GRANTED.[17]

IT IS, THEREFORE, ORDERED:

1. That Gwendolyn Chunn's Motions to Dismiss [45] [81] are hereby GRANTED, and plaintiff's claims against her are dismissed with prejudice;

2. That plaintiff's request to add Jeffrey Washington as a defendant in this matter is denied; plaintiff has amended his complaint at least two times, and was allowed to clarify his claims during his Omnibus hearing; and

3. That all further relief requested in plaintiff's responses is denied.

SO ORDERED AND ADJUDGED this the 14th day of February, 2008.

s/ Michael T. Parker
United States Magistrate Judge

---

[17]Because the court finds that Chunn's motions to dismiss should be granted for the reasons stated herein, the court need not reach Chunn's argument that she is entitled to the protections of the federal Volunteer Protection Act and its Mississippi counterpart.