# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# HATTIESBURG DIVISION

**PAUL GRAHAME MORGAN**                                                                      **PLAINTIFF**

**V.**                                          **CIVIL ACTION NO. 2:07cv15-MTP**

**STATE OF MISSISSIPPI,** *et al.*                                           **DEFENDANTS**

## OPINION AND ORDER

THIS MATTER is before the court on the Motion for Summary Judgment [197] filed by Defendants Wexford Health Sources, Inc., Emil Dameff, Ron Woodall, Charmaine McCleave, and Millis Washington (sometimes collectively referred to as the "Moving Defendants"). Having reviewed the submissions of the parties and the applicable law, the court finds that the Motion [197] should be GRANTED in part and DENIED in part.

## FACTUAL BACKGROUND

Plaintiff Paul Grahame Morgan is currently incarcerated in the South Mississippi Correctional Institution ("SMCI"), serving an eight-year sentence for two counts of the unlawful touching of a child and one count of child molestation.[1] Plaintiff, proceeding *pro se* and *in forma pauperis*, filed his Complaint [1] pursuant to 42 U.S.C. § 1983 on January 24, 2007. Through his voluminous complaints and amended complaints, and as clarified during his *Spears*[2] hearing, Plaintiff alleges claims against the Defendants in their official and individual capacities for the denial and/or delay of adequate medical treatment, improper conditions of confinement,

---

[1] *See* MDOC database, http://www.mdoc.state.ms.us/InmateDetails.asp?PassedId=53437.

[2] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985). Plaintiff's *Spears* hearing took place on August 7, 2007. Plaintiff's *Spears* transcript is cited herein as "Tr." *See* Transcript, filed on September 7, 2007.

violation of his freedom of religion, violation of his right to be free from illegal searches and seizures under the Fourth Amendment, denial of access to the courts, an inadequate Administrative Remedy Program ("ARP"), and violation of the Americans with Disabilities Act ("ADA"). The allegations in Plaintiff's complaints occurred while he was housed in SMCI, the Mississippi State Penitentiary at Parchman (Parchman), and the Central Mississippi Correctional Facility ("CMCF").[3] Plaintiff named thirty-four Defendants in this action.[4]

Several claims and Defendants have since been dismissed. *See* Orders [71][73][77][101][102][120][122]. Defendants Dr. Wiggins and Mr. Blackstone were dismissed by Order [71] dated September 24, 2007. The court denied Plaintiff's motion for leave to add Chaplin Cotes and the Post Master at SMCI as Defendants. *See* Order [73]. Defendant Lloyd Beasley was dismissed by Order [101] dated November 14, 2007. Defendants Richard Bazzle and the ACA Auditors were dismissed by Order [102] dated November 30, 2007. Defendant James Johnson was dismissed by Text Order dated February 5, 2008. Defendant Larry Hardy was dismissed by Order [120] dated February 12, 2008. Defendant Gwendolyn Chunn was dismissed by Order

---

[3]Because Plaintiff's claims allegedly occurred while he was incarcerated in three different facilities, a time-line is appropriate. Plaintiff entered MDOC custody at CMCF on May 19, 2005. He was apparently transferred to Parchman on June 3, 2005, and then transferred to SMCI on October 4, 2005. *See* Complaint [1] at 7-11. He was transferred to CMCF on May 1, 2007, and was transferred back to SMCI on July 30, 2007, where he is currently incarcerated. *See* Response [224] at 4.

[4]Plaintiff named the following thirty-four Defendants: the State of Mississippi, Christopher Epps, Emmitt Sparkman, Ron King, Lawrence Kelly, Margaret Bingham, Larry Hardy, Gwendolyn Chunn, Richard Bazzle, Bobby King, Dr. Bearry, Ruthie Hall, Dr. Wiggins, Millis Washington, Dr. Arnold, Dr. Walker, Mr. Blackstone, Lloyd Beasley, Jason Holmes, Dr. Watts, Dr. McCleave, Dr. Ron Woodall, Correctional Medical Services, Wexford Health Sources, Inc., James Johnson, Rita Bonner, Hubert Davis, Brenda Simms, Emil Dameff, ACA Auditors, Sharon Page, Nina Enlers, Chaplin Cotes, and the Post Master at SMCI.

2

[122] dated February 14, 2008. To date, twenty-four Defendants remain in this action.[5]

As set forth in his pleadings, and as amended by the sworn testimony given during his *Spears* hearing,[6] Plaintiff alleges that the Moving Defendants were deliberately indifferent to his serious medical needs and violated the ADA as set forth in detail below.[7]

On August 20, 2008, Wexford Health Sources, Inc., Emil Dameff, Ron Woodall, Charmaine McCleave, and Millis Washington filed their Motion for Summary Judgment [197]. On or about September 26, 2008, Plaintiff filed his response [224] in opposition to the motion.

STANDARD FOR SUMMARY JUDGMENT

This court may grant summary judgment only if, viewing the facts in a light most favorable to the plaintiff, the defendants demonstrate that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. *Woods v. Smith,* 60 F.3d 1161, 1164 (5th Cir. 1995). If the defendants fail to discharge the burden of showing the absence of a genuine issue concerning any material fact, summary judgment must be denied. *John v.*

---

[5] The following twenty-four Defendants remain in this action at this time: the State of Mississippi, Christopher Epps, Emmitt Sparkman, Ron King, Lawrence Kelly, Margaret Bingham, Bobby King, Dr. Bearry, Ruthie Hall, Millis Washington, Dr. Arnold, Dr. Walker, Jason Holmes, Dr. Watts, Dr. McCleave, Dr. Ron Woodall, Correctional Medical Services ("CMS"), Wexford Health Sources, Inc. ("Wexford"), Rita Bonner, Hubert Davis, Brenda Simms, Emil Dameff, Sharon Page, and Nina Enlers.

[6] *See Hurns v. Parker*, 165 F.2d 24, No. 98-60006, 1998 WL 870696, at *1 (5th Cir. Dec. 2, 1998); *Riley v. Collins*, 828 F.2d 306, 307 (5th Cir. 1987) (stating that plaintiff's claims and allegations made at *Spears* hearing supersede claims alleged in complaint).

[7] Plaintiff is an ambulatory paraplegic due to a spinal injury that occurred prior to his incarceration. (Tr. at 5.) Plaintiff also has a neurogenic bladder. (Tr. at 29.) "Neurogenic bladder" is defined as "any condition of dysfunction of the urinary bladder caused by a lesion of the central or peripheral nervous system . . . ." *Dorland's Illustrated Medical Dictionary* 217 (29th ed.).

3

*Louisiana,* 757 F.2d 698, 708 (5th Cir. 1985). The existence of an issue of material fact is a question of law that this court must decide, and in making that decision, it must "draw inferences most favorable to the party opposing the motion, and take care that no party will be improperly deprived of a trial of disputed factual issues." *John*, 757 F.2d at 708, 712.

There must, however, be adequate proof in the record showing a real controversy regarding material facts. "Conclusory allegations," *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 902 (1990), unsubstantiated assertions, *Hopper v. Frank*, 16 F.3d 92, 96-97 (5th Cir. 1994), or the presence of a "scintilla of evidence," *Davis v. Chevron U.S.A.*, *Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994), is not enough to create a real controversy regarding material facts. In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (emphasis omitted).

## ANALYSIS

Plaintiff's claims are before the court pursuant to 42 U.S.C. § 1983. However, Section 1983 "neither provides a general remedy for the alleged torts of state officials nor opens the federal courthouse doors to relieve the complaints of all who suffer injury at the hands of the state or its officers." *White v. Thomas*, 660 F.2d 680, 683 (5th Cir.1981). Rather, "[i]t affords a remedy only to those who suffer, as a result of state action, deprivation of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *White*, 660 F.2d at 683 (quoting 42 U.S.C. § 1983).

It is well-settled that Section 1983 does not "create supervisory or *respondeat superior* liability." *Oliver v. Scott,* 276 F.3d 736, 742 & n.6 (5th Cir. 2002); *see also Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987) (citations omitted) ("Under § 1983, supervisory officials

cannot be held liable for the actions of subordinates under any theory of vicarious liability."). "To state a cause of action under § 1983, the plaintiff must allege facts reflecting the defendants' participation in the alleged wrong, specifying the personal involvement of each defendant." *Jolly v. Klein*, 923 F. Supp. 931, 943 (S.D. Tex. 1996) (citing *Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992)). Thus, supervisory prison officials may be held liable for a Section 1983 violation only if they either were personally involved in the constitutional deprivation or if there is a "sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Thompkins*, 828 F.2d at 304.

Moreover, "[f]or purposes of liability, a suit against a public official in his official capacity is in effect a suit against the local government entity he represents." *Mairena v. Foti*, 816 F.2d 1061, 1064 (5th Cir. 1987) (citations omitted). The Supreme Court has held that in order for a local governmental entity to have liability under Section 1983, a plaintiff must prove that a policy, custom or practice of that local government entity was the "moving force" behind the constitutional violation. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978).

**Denial of Adequate Medical Care**

"Prison officials violate the constitutional proscription against cruel and unusual punishment when they are deliberately indifferent to a prisoner's serious medical needs, as doing so constitutes unnecessary and wanton infliction of pain." *Davidson v. Texas Dep't of Criminal Justice*, 91 Fed. Appx. 963, 964 (5th Cir. 2004) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). Deliberate indifference "is an extremely high standard to meet." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)). The test for establishing deliberate indifference is "one of subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A

prison official may not be held liable under this standard pursuant to Section 1983 unless the plaintiff alleges facts which, if true, would establish that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 838. Plaintiff must "submit evidence that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any other similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Davidson*, 91 Fed. Appx. at 965 (quoting *Domino*, 239 F.3d at 756).

Negligent conduct by prison officials does not rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 333-34 (1986). The plaintiff is not entitled to the "best" medical treatment available. *McMahon v. Beard*, 583 F.2d 172, 174 (5th Cir. 1978); *Irby v. Cole*, No. CIVA 403CV141WHBJCS, 2006 WL 2827551, at *7 (S.D. Miss. Sept. 25, 2006). Further, a prisoner's "disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs." *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 2001).

### *Wexford*

Plaintiff claims that Wexford failed to provide adequately trained staff and an adequate policy to carry out reasonable medical treatment for him. Specifically, he claims the following violations by Wexford: inadequate and untimely receipt of medical supplies, inadequate treatment for infectious sores, inadequate medical privacy, inadequate treatment for disabled inmates such as Plaintiff, inadequate scheduling of follow-up appointments, and understaffing.[8]

---

[8]Plaintiff's ADA claims against Wexford are addressed below.

*See* Complaint [1] at ¶¶ 142; 145; 209; Amended Complaint [5] at ¶¶ 7-9.  It is undisputed that Wexford assumed the medical contract with the MDOC on July 1, 2006.[9]

As stated above, there is no respondeat superior liability under Section 1983.  *See supra*, *Oliver,* 276 F.3d at 742 & n.6; *see also Powell v. Shopco Laurel Co.*, 678 F.2d 504, 505-06 (1982) (holding that plaintiff could not recover against private state-employed company under Section 1983 based on theory of respondeat superior).  Further, Plaintiff has failed to demonstrate that Wexford affirmatively participated in any constitutional deprivation or implemented an unconstitutional policy.  *See Mouille v. City of Live Oak, Tex*., 977 F.2d 924, 929 (5th Cir. 1992).  Plaintiff alleges that Wexford had a policy of prescribing Bactrim and Clindamycin for infections, and that it only orders medical supplies from certain companies.  *See* Complaint [1] at ¶¶ 142, 145.  In their sworn affidavits, Dr. McCleave and Dr. Woodall, Wexford employees, state that Bactrim is a broad spectrum antibiotic frequently used to treat urinary tract infections and other infections, and that it was an appropriate medication for Plaintiff.  *See* Exs. 5 and 6 [231] to Motion [197].  Plaintiff's disagreement with the prescribed medications does not amount to a constitutional violation.  *See Norton*, 122 F.3d at 292.  The records reflect that Plaintiff was consistently treated for his recurring urinary tract infections and for his facial lesions.  *See* Exs. 5 and 6 [231] to Motion [197].  Similarly, Plaintiff's claim that Wexford only orders medical supplies from certain companies fails to establish an unconstitutional policy.

Plaintiff's opposition [224] fails to establish any genuine issues of material fact regarding his claims for deliberate indifference against Wexford.  Instead, under the heading titled

---

[9]*See* Memorandum [198] at 1; Response [224] at 2.

"Wexford Health Sources," Plaintiff focuses on allegations regarding Millis Washington's alleged policies relating to ordering supplies and taking home the key to the supply closet, including allegations that pre-date Wexford's contract. *See* Response [224] at 20-26. Wexford cannot be held liable for the acts of Ms. Washington. *See supra*, *Oliver,* 276 F.3d at 742 & n.6.[10]

Moreover, Plaintiff's allegations against Wexford regarding understaffing fail to amount to a constitutional violation. *See Moneer v. Harrison County Detention Ctr.*, No. 1:07cv1060LG-JMR, 2008 WL 4450255, at *5 (S.D. Miss. Sept. 29, 2008) (holding that allegations of understaffing and inadequate security features at facility were insufficient to establish deliberate indifference; allegations established negligence at most); *Williams v. Holder*, No. GC90-186-SO, 1995 WL 1945553, at *8 (N.D. Miss. Oct. 25, 1995) ("Evidence of understaffing, without more, is not proof of official policy."); *Hood v. Itawamba County*, 819 F. Supp. 556, 564 (N.D. Miss. 1993).

While Plaintiff may disagree with the medical treatment that was provided, this does not amount to a constitutional violation. *See Norton*, 122 F.3d at 292; *see also McMahon*, 583 F.2d at 174 (holding that prisoners are not entitled to the "best" medical treatment available). Accordingly, Wexford is entitled to judgment as a matter of law on Plaintiff's claims for deliberate indifference to his serious medical needs.

### Dr. Dameff

Plaintiff alleges that Dr. Emil Dameff, Regional Medical Director for Wexford, is fully aware of the understaffing at SMCI and failed to do anything about it. He also claims that Dr.

---

[10]Plaintiff states "apparently Wexford intends to cover Ms. Washington's liability not only as a Wexford employee but also for Washington's involvement with plaintiff as a CMS employee." Opposition [224] at 21.

Dameff is "keenly aware" of his medical condition and treatment because he responded to Plaintiff's Second Step ARP grievance complaining of his medical treatment. Plaintiff further claims that Dr. Dameff failed to intervene and address the constitutional and ADA violations.[11] *See* Amended Complaint [5] at ¶ ¶ 9-10.

The record reflects that Dr. Emil Dameff is the Regional Medical Director for Wexford, and is based out of Florida, and has never seen or treated Plaintiff. *See* Exs. 5 and 6 [231] to Motion [197]. Dr. Dameff's only involvement with Plaintiff is his response to his Second Step ARP grievance. In his Second Step Response Form dated September 28, 2006, Dr. Dameff stated that he was referring Plaintiff to a specialist, which could take one to two months, and that in the meantime he would be followed by Dr. Trinca. *See* Ex. 6 to Response [224-4].

Plaintiff has failed to establish a constitutional claim against Dr. Dameff, as he has failed to allege, much less establish, that he affirmatively participated in the alleged violation or implemented an unconstitutional policy that causally resulted in his injury. *See Johnson*, 2002 WL 243359, at *1; *see also Stewart v. Murphy*, 174 F.3d 530, 536 (5th Cir. 1999) (dismissing plaintiff's claims against Parchman's medical director since he was not plaintiff's treating physician and had limited contact with him); *Phillips v. Monroe County*, 143 F. Supp. 2d 663, 668 (N.D. Miss. 2001) (dismissing plaintiff's claims against Parchman's medical director since he had no contact with plaintiff). Moreover, Plaintiff's allegations against Dr. Dameff regarding understaffing fail to amount to a constitutional violation. *See Moneer*, 2008 WL 4450255, at *5.

Even if Dr. Dameff were personally involved with Plaintiff's treatment, Plaintiff has failed to establish that he was deliberately indifferent to a serious medical need. Because Dr.

---

[11]Plaintiff's ADA claims against Dr. Dameff are addressed below.

Dameff referred Plaintiff to a specialist for his medical problems, the court cannot conclude that Dr. Dameff "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any other similar conduct that would clearly evince a wanton disregard for any serious medical needs." *See Davidson*, 91 Fed. Appx. at 965 (quoting *Domino*, 239 F.3d at 756).

Finally, Plaintiff does not have a constitutional right to a grievance procedure, and has no due process liberty interest right to having his grievance resolved to his satisfaction. *See Geiger v. Jowers*, 404 F.3d 371, 374-75 (5th Cir. 2005); *Jones v. Shabazz*, No. H-06-1119, 2007 WL 2873042, at *21 (E.D. Tex. Sept. 28, 2007). Accordingly, Plaintiff's allegation that Dr. Dameff failed to grant him his requested relief through the ARP also fails to establish a constitutional violation.

For the foregoing reasons, Dr. Dameff is entitled to judgment as a matter of law on Plaintiff's claims for deliberate indifference to his serious medical needs.

*Dr. Woodall*

Plaintiff claims that Dr. Ron Woodall, a Wexford employee at SMCI, saw him on November 6, 2006, for a facial skin infection. Dr. Woodall allegedly refused to take a skin culture and prescribed the same medication previously prescribed by Dr. Watts (Bactrim and Clindamycin), which had only resulted in "moderate improvement." Further, when Dr. Woodall inquired as to whether Plaintiff had received any new urinary tubing, he told him that he had, but it was inadequate and leaked urine. Dr. Woodall informed Plaintiff that because he was incarcerated he could not having the tubing of his choice, and had to deal with what Wexford could get. Plaintiff also requested a shower wheel-chair for his condition; apparently Dr.

Woodall did not provide one.[12]  *See* Complaint at ¶¶ 142-46.  Plaintiff alleges that Dr. Woodall is fully aware of the understaffing at SMCI and failed to do anything about it.  *See* Amended Complaint [5] at ¶ 9.

In his motion and supporting affidavit, Dr. Woodall states that he is familiar with the medical treatment provided to Plaintiff at SMCI, and that he believes he has been "treated appropriately for both his recurring urinary tract infections and for his facial lesions."  Affidavit [231] at ¶ 6.  He further states that the medications given to Plaintiff were appropriate for his condition.  *Id.* at ¶¶ 7-8.  Dr. Woodall also states that Plaintiff has been repeatedly treated by himself and other doctors for urinary tract infections, and that recurrent urinary tract infections are a common problem for patients with Plaintiff's medical condition.  *Id.* at ¶¶ 9-10; Memorandum [198] at 6.

In his opposition [224], Plaintiff expounds on his allegations against Dr. Woodall, and claims that his inadequate treatment has continued to the present day.  *See* Response [224] at 32-34.  Specifically, Plaintiff claims Dr. Woodall has prescribed inadequate medication for his staph infections and urinary tract infections, and has failed to schedule or keep follow-up appointments with Plaintiff.

The record reflects that Plaintiff has been treated by multiple doctors on multiple occasions for his various ailments.  *See* Exs. 1-4 to Motion [197].  Plaintiff's disagreement with the medication prescribed by Dr. Woodall, or his method of examination, treatment, and/or diagnosis for his ailments, simply does not rise to the level of a constitutional violation.  *See Norton*, 122 F.3d at 292.  Even assuming Dr. Woodall should not have prescribed the same

---

[12]Plaintiff's ADA claims against Dr. Woodall are addressed below.

medication for Plaintiff when it had not been effective in the past, such conduct constitutes negligence, which does not amount to deliberate indifference. *See Daniels*, 474 U.S. at 333-34. While the court is sympathetic to Plaintiff's medical condition, Plaintiff is reminded that prisoners are not entitled to the "best" medical treatment available. *See McMahon*, 583 F.2d at 174.

Finally, Plaintiff's allegations against Dr. Woodall regarding understaffing fail to amount to a constitutional violation. *See Moneer*, 2008 WL 4450255, at *5. Accordingly, Dr. Woodall is entitled to judgment as a matter of law on Plaintiff's claims for deliberate indifference to his serious medical needs.

### *Dr. McCleave*

Plaintiff alleges that he saw Dr. Charmaine McCleave, a Wexford employee, on November 30, 2006, during his medical screening upon his return to SMCI.[13] Dr. McCleave allegedly noted Plaintiff's prescription of Bactrim from CMCF, but refused to schedule a follow-up appointment for the "persisting" lesions on his face. *See* Complaint at ¶¶ 173-75. Plaintiff further claims that Dr. McCleave "purposely stopped all treatment" for his facial lesions, which resulted in a two-month delay in any further prescribed treatment for his facial lesions. *See* Amended Complaint [5] at ¶ 7.[14]

---

[13]Plaintiff had been transferred to CMCF on November 20, 2006, for an off-site doctor's appointment. *See* Complaint [1] at 23.

[14]In his Response [224] to Defendants' Motion [197], Plaintiff claims that his complaint also includes a claim that Dr. McCleave is incompetent to treat him because she does not believe he is a paraplegic, and claims regarding his "continued struggle" in obtaining specific aids he needs to shower. *See* Response [224] at 26-27. These claims were not alleged against Dr. McCleave in Plaintiff's Complaint or his Amended Complaints, and were not discussed during his *Spears* hearing. Accordingly, no such claims are pending against Dr. McCleave and will not be addressed herein.

In her affidavit, Dr. McCleave states that she is familiar with the treatment provided to Plaintiff at SMCI and that she believes he has been treated properly for his recurring urinary tract infections and for his facial lesions. She further states that Erythromycin is an appropriate medication for facial lesions and was prescribed to Plaintiff. *See* Ex. 5 to Motion [197].

The record reflects that Plaintiff saw Dr. Watts on October 16, 2006, for a skin rash. Plaintiff was prescribed Bactrim and Cleocin (Clindamycin) and was told to return for a follow-up appointment in three weeks.[15] Plaintiff saw Dr. Ron Woodall on November 6, 2006, for his follow-up appointment, and Dr. Woodall prescribed Bactrim and Cleocin and told Plaintiff to return for a follow-up visit in three weeks.[16] Plaintiff's three-week follow up visit was scheduled for November 27, 2006; however, Plaintiff was moved to CMCF for off-site medical treatment and did not return to SMCI until November 30, 2006.[17]

On November 30, 2006, Plaintiff saw Dr. McCleave when he returned to SMCI from an off-site consultation. She noted that Plaintiff was prescribed Bactrim on November 21, 2006, for two more weeks by Dr. Liddell.[18] Plaintiff claims "that's when all treatment stop (sic) because of McCleave." *See* Response [224] at 28. In support of this argument, he relies on Dr. McCleave's written statement, "rtn 2 wks for re✓" with a line crossed through it.[19]

Plaintiff has failed to establish that Dr. McCleave was deliberately indifferent to his

---

[15]*See* Ex. 1 to Motion [197] at Morgan 000082,120.

[16]*Id.* at Morgan 000089, 121, 278.

[17]*Id.* at Morgan 000121; Response [224] at 28.

[18]*See* Ex. 1 to Motion [197] at Morgan 000090, 121.

[19]*See* Ex. 1 to Motion [197] at Morgan 000121, 250; Response [224] at 28.

13

serious medical needs. Assuming his skin rash (possibly a staph infection) was a serious medical need, the fact that Dr. McCleave did not prescribe further medication or schedule a follow-up appointment does not show that she was deliberately indifferent. Indeed, Plaintiff states that he told Dr. McCleave that he had missed his follow-up visit for his face rash, but since Dr. Liddell prescribed him Bactrim for two more weeks, he "would try it still and then follow-up." *See* Response [224] at 28. Dr. McCleave could have reasonably assumed that Plaintiff would follow-up if and when his rash did not clear up. As stated in her affidavit, Dr. McCleave believes Plaintiff was properly treated for his facial lesions. *See* Ex. 5 to Motion [197]. Plaintiff's disagreement with Dr. McCleave's treatment, diagnosis, and/or recommendations is insufficient to establish deliberate indifference. *See Norton*, 122 F.3d at 292.

Further, Plaintiff has failed to show that treatment for his facial lesions was delayed for two months, or that such a delay was due to Dr. McCleave's actions or inactions. The record reflects that the first sick call Plaintiff submitted for his facial lesions after his appointment with Dr. McCleave was on January 24, 2007,[20] and Plaintiff was prescribed Erythromycin by Dr. McGrew two days later.[21] Plaintiff has failed to allege, much less establish that Dr. McCleave prevented him from submitting a sick call request or otherwise seeking treatment for his facial lesions prior to this date. The record is clear that Plaintiff continued to receive treatment for his facial rash after November 30, 2006. *See* Ex. 1 to Motion [197] at Morgan 000250, 122, 253, 290, 293-95. Accordingly, Plaintiff's claims against Dr. McCleave for deliberate indifference to

---

[20]*See* Ex. 1 to Motion [197] at Morgan 000095.

[21]*See* Ex. 1 to Motion [197] at Morgan 000250. Plaintiff complains that Dr. McGrew prescribed this medication without examining him, and that his receipt of the medication was delayed for several days. This allegation is irrelevant to his claims for deliberate indifference against Dr. McCleave.

a serious medical need should be dismissed.

*Millis Washington*

Plaintiff claims that upon his arrival at SMCI on October 4, 2005, his own personal supply of external catheters and latex tubing used to connect the external catheters was confiscated from him.[22] Plaintiff claims that Millis Washington, the supply clerk at SMCI, delayed providing him with external catheters for four and a half months, which prevented him from bathing for weeks at a time, which "perpetuated" his urinary tract infections. Around late December 2005 or early January 2006, Plaintiff was allegedly informed by Nurse Hillman that Ms. Washington would not order external catheters for Plaintiff because they were not on CMS's supply list. *See* Complaint [1] at ¶¶ 61, 76, 81-83.

Plaintiff claims he had been telling Ms. Washington that his family would order the supplies he needed since November 2005, but he was ignored. In February 2006, after a friend called SMCI on his behalf, Plaintiff claims that Ms. Washington called Plaintiff to the infirmary twice to tell him that she would have his external catheters in one week. Plaintiff finally received external catheters in February 2006, after he had been without them for four and a half months, but received no new tubing. *See* Complaint [1] at ¶¶ 88-90, 98.

Once Plaintiff started receiving the external catheters in February 2006, he claims he had trouble continuing to receive the catheters, leg bags, and other necessary supplies because Ms. Washington had a custom and practice of taking the supply closet key home with her, which prevented the nurses from giving him his supplies on numerous occasions. This prevented him

---

[22]The external catheters were apparently returned to Plaintiff a few weeks later. He claims he received a package of ten external catheters (the ones he brought with him from Parchman) every week for five weeks, and four external catheters on his sixth week at SMCI. *See* Complaint [1] at ¶ 74.

from bathing for days at a time, which worsened his urinary tract infections. Plaintiff claims Ms. Washington's policy and custom of taking the supply closet key home with her amounted to deliberate indifference. *See* Complaint at ¶¶ 99-103; 179.

In October of 2006, Nurse Hillman allegedly informed Plaintiff that Ms. Washington had special ordered him night-time bed bags, but Plaintiff claims they had the same hard plastic tubing that leaked urine on him. Nurse Hillman informed him that they (medical) knew of no place or company in this country where someone could separately order latex tubing. Plaintiff allegedly supplied the number of his outside provider of his preferred latex tubing for his catheters to Ms. Washington and others, but they denied his request to order this tubing. *See* Complaint at ¶¶ 128-31.

Plaintiff claims he had inadequate tubing, leg bags, and/or catheters from October 4, 2005 though November 28, 2006. During this time, the inadequate tubing caused urine to leak all over his clothing, the inadequate supplies perpetuated his urinary tract infections, and he was forced to skip baths due to no replacement catheters. *See* Complaint at ¶¶ 108-10, 119-31, 147-48, 151, 166-68.

Plaintiff claims he finally received adequate tubing and catheters on November 28, 2006, while at CMCF for an outside doctor's visit. *Id.* at ¶ 169. Upon his return to SMCI on November 30, 2006, Mike Hatten informed him that SMCI was now able to get tubing comparable to the specific tubing he requested. *Id.* at ¶ 177. However, Plaintiff claims no leg bag was issued to him on December 2, 2006, due to Ms. Washington's policy and practice of taking home the supply closet key. *Id.* at ¶ 179.

The record reflects that Ms. Washington is currently employed by Wexford, but that prior to July 1, 2006, she was employed by CMS. *See* Exs. 6-7 to Motion [197]. She is involved with

ordering and distributing supplies. In her affidavit, she states that during Plaintiff's incarceration at SMCI, he has "repeatedly been provided with an external catheter, tubing, and bag." *See* Ex. 7 to Motion [197]. She further states that although Plaintiff has been dissatisfied with the type of supplies he received, he was never denied catheters or related supplies. She states that she ordered supplies from several different companies in an attempt to accommodate Plaintiff. Finally, she states that she takes the key to supply closet home each day for security reasons. *Id.*

Based on the evidence, the court concludes that genuine issues of material fact exist as to whether Ms. Washington was deliberately indifferent to Plaintiff's serious medical needs. Specifically, whether she ignored his complaints regarding the size and type of catheters and related supplies, "intentionally treated him incorrectly, or engaged in any other similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Davidson*, 91 Fed. Appx. at 965 (quoting *Domino*, 239 F.3d at 756). For example, Ms. Washington has given no explanation for not allowing Plaintiff's parents to order and pay for his correct supplies or for not ordering the supplies from the company suggested by Plaintiff. She also has not rebutted Plaintiff's claim that supplies were not always available in the emergency room after she had left with the supply closet key, forcing Plaintiff to remain in urine-soaked clothing for days at a time.[23] *See* Response [224] at 23. A fact issue also remains as to the alleged delay of supplies provided to Plaintiff, and whether such delay resulted in a substantial harm.

For the foregoing reasons, genuine issues of material fact preclude summary judgment in favor of Ms. Washington.

**ADA Violations**

Plaintiff has alleged that certain Defendants, including Wexford, Dr. Arnold, and Dr.

---

[23]The Moving Defendants did not file a rebuttal in reply to Plaintiff's Response [224].

Dameff, violated Title II of the ADA.[24]  The Moving Defendants did not address these claims in their Motion [197].  Accordingly, these claims remain pending against these Moving Defendants and will proceed to trial.

CONCLUSION

For the reasons stated above, the court finds that Defendants' Motion for Summary Judgment [197] should be granted in part and denied in part.  Accordingly,

IT IS, THEREFORE, ORDERED:

1. That the Moving Defendants' Motion [197] is GRANTED in part and DENIED in part as set forth below.

2. Defendants' Motion [197] is GRANTED as to Plaintiff's claims for deliberate indifference to his serious medical needs against Wexford, Dr. Dameff, Dr. Arnold, and Dr. McCleave.  These Defendants are entitled to judgment as a matter of law on Plaintiff's claims for deliberate indifference to his serious medical needs.

3. Defendants' Motion [197] is DENIED as to Plaintiff's claims for deliberate indifference to his serious medical needs against Millis Washington.

4. Defendant Dr. McCleave is hereby DISMISSED from this action with prejudice.

---

[24] For example, Plaintiff alleges that Wexford and the other Defendants failed to provide adequate accommodations and equipment for disabled inmates, Dr. Woodall refused to provide him with a shower wheelchair, and Dr. Dameff knew of the ADA violations and failed to take any action.  *See* Complaint [1] at ¶¶ 146, 209, 221; Amended Complaint [5].

Plaintiff did not allege claims for violations of the ADA against Ms. Washington or Dr. McCleave.

18

SO ORDERED this the 10th day of February, 2009.

                                                s/ Michael T. Parker
                                                United States Magistrate Judge