**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION**

**PAUL GRAHAME MORGAN, #53437**                                    **PLAINTIFF**

**V.**                                    **CIVIL ACTION NO. 2:07cv15-MTP**

**STATE OF MISSISSIPPI,** *et al.*                                    **DEFENDANTS**

## OPINION AND ORDER

THIS MATTER is before the court on the Motion for Summary Judgment [216] filed by Defendants Correctional Medical Services, Inc. ("CMS"), Nurse Ruthie Hall, Dr. John Bearry, Dr. Risher Watts, Dr. Rochel Walker, Dr. Patrick Arnold, and Bobby King (sometimes collectively referred to as the "CMS Defendants"), and *sua sponte* for evaluation pursuant to 28 U.S.C. § 1915(e)(2).[1] Having reviewed the submissions of the parties and the applicable law, the court finds that the Motion [216] should be granted and that the CMS Defendants should be dismissed from this action with prejudice.

FACTUAL BACKGROUND

Plaintiff Paul Grahame Morgan is currently incarcerated in the South Mississippi Correctional Institution ("SMCI"), serving an eight-year sentence for two counts of the unlawful touching of a child and one count of child molestation.[2] Plaintiff, proceeding *pro se* and *in forma pauperis*, filed his Complaint [1] pursuant to 42 U.S.C. § 1983 on January 24, 2007.

---

[1]Plaintiff is proceeding *pro se* and *in forma pauperis* pursuant to 28 U.S.C. § 1915. *See* Order [6].

[2]*See* MDOC database, http://www.mdoc.state.ms.us/InmateDetails.asp?PassedId=53437.

Through his voluminous complaints and amended complaints, and as clarified during his *Spears*[3] hearing, Plaintiff alleges claims against the Defendants in their official and individual capacities for the denial and/or delay of adequate medical treatment, improper conditions of confinement, violation of his freedom of religion, violation of his right to be free from illegal searches and seizures under the Fourth Amendment, denial of access to the courts, an inadequate Administrative Remedy Program ("ARP"), and violation of the Americans with Disabilities Act ("ADA"). The allegations in Plaintiff's complaints occurred while he was housed in SMCI, the Mississippi State Penitentiary at Parchman (Parchman), and the Central Mississippi Correctional Facility ("CMCF").[4] Plaintiff named thirty-four Defendants in this action.[5]

Several claims and Defendants have since been dismissed. *See* Orders [71][73][77][101] [102][120][122][238]. Defendants Dr. Wiggins and Mr. Blackstone were dismissed by Order [71] dated September 24, 2007. The court denied Plaintiff's motion for leave to add Chaplin Cotes and the Postmaster at SMCI as Defendants. *See* Order [73]. Defendant Lloyd Beasley

---

[3]*Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985). Plaintiff's *Spears* hearing took place on August 7, 2007. Plaintiff's *Spears* transcript is cited herein as "Tr." *See* Transcript, filed on September 7, 2007.

[4]Because Plaintiff's claims allegedly occurred while he was incarcerated in three different facilities, a time-line is appropriate. Plaintiff entered MDOC custody at CMCF on May 19, 2005. He was apparently transferred to Parchman on June 3, 2005, and then transferred to SMCI on October 4, 2005. *See* Complaint [1] at 7-11. He was transferred to CMCF on May 1, 2007, and was transferred back to SMCI on July 30, 2007, where he is currently incarcerated. *See* Response [224] at 4.

[5]Plaintiff named the following thirty-four Defendants: the State of Mississippi, Christopher Epps, Emmitt Sparkman, Ron King, Lawrence Kelly, Margaret Bingham, Larry Hardy, Gwendolyn Chunn, Richard Bazzle, Bobby King, Dr. Bearry, Ruthie Hall, Dr. Wiggins, Millis Washington, Dr. Arnold, Dr. Walker, Mr. Blackstone, Lloyd Beasley, Jason Holmes, Dr. Watts, Dr. McCleave, Dr. Ron Woodall, CMS, Wexford Health Sources, Inc., James Johnson, Rita Bonner, Hubert Davis, Brenda Simms, Emil Dameff, ACA Auditors, Sharon Page, Nina Enlers, Chaplin Cotes, and the Post Master at SMCI.

was dismissed by Order [101] dated November 14, 2007. Defendants Richard Bazzle and the ACA Auditors were dismissed by Order [102] dated November 30, 2007. Defendant James Johnson was dismissed by Text Order dated February 5, 2008. Defendant Larry Hardy was dismissed by Order [120] dated February 12, 2008. Defendant Gwendolyn Chunn was dismissed by Order [122] dated February 14, 2008. Defendant Dr. McCleave was dismissed by Order [238] dated February 10, 2009. Twenty-three Defendants remain in this action.[6]

As set forth in his pleadings, and as amended by the sworn testimony given during his *Spears* hearing,[7] Plaintiff alleges that the CMS Defendants were deliberately indifferent to his serious medical needs, violated his privacy rights, and violated the ADA as set forth in detail below.[8]

On September 9, 2008, the CMS Defendants filed their Motion for Summary Judgment [216]. Plaintiff filed his Response [235] in opposition to the motion on or about November 14, 2008; the CMS Defendants filed their Rebuttal [236] on November 21, 2008; and Plaintiff filed his sur-response [237] on December 5, 2008.

---

[6]The following twenty-three Defendants remain in this action at this time: the State of Mississippi, Christopher Epps, Emmitt Sparkman, Ron King, Lawrence Kelly, Margaret Bingham, Bobby King, Dr. Bearry, Ruthie Hall, Millis Washington, Dr. Arnold, Dr. Walker, Jason Holmes, Dr. Watts, Dr. Ron Woodall, CMS, Wexford Health Sources, Inc. ("Wexford"), Rita Bonner, Hubert Davis, Brenda Simms, Emil Dameff, Sharon Page, and Nina Enlers.

[7]*See Hurns v. Parker*, 165 F.2d 24, No. 98-60006, 1998 WL 870696, at *1 (5th Cir. Dec. 2, 1998); *Riley v. Collins*, 828 F.2d 306, 307 (5th Cir. 1987) (stating that plaintiff's claims and allegations made at *Spears* hearing supersede claims alleged in complaint).

[8]Plaintiff is an ambulatory paraplegic due to a spinal injury that occurred prior to his incarceration. (Tr. at 5.) Plaintiff also has a neurogenic bladder. (Tr. at 29.) "Neurogenic bladder" is defined as "any condition of dysfunction of the urinary bladder caused by a lesion of the central or peripheral nervous system . . . ." *Dorland's Illustrated Medical Dictionary* 217 (29th ed.).

## STANDARD FOR SUMMARY JUDGMENT

This court may grant summary judgment only if, viewing the facts in a light most favorable to the Plaintiff, the Defendants demonstrate that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. *Woods v. Smith,* 60 F.3d 1161, 1164 (5th Cir. 1995). If the Defendants fail to discharge the burden of showing the absence of a genuine issue concerning any material fact, summary judgment must be denied. *John v. Louisiana,* 757 F.2d 698, 708 (5th Cir. 1985). The existence of an issue of material fact is a question of law that this court must decide, and in making that decision, it must "draw inferences most favorable to the party opposing the motion, and take care that no party will be improperly deprived of a trial of disputed factual issues." *John*, 757 F.2d at 708, 712.

There must, however, be adequate proof in the record showing a real controversy regarding material facts. "Conclusory allegations," *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 902 (1990), unsubstantiated assertions, *Hopper v. Frank*, 16 F.3d 92, 96-97 (5th Cir. 1994), or the presence of a "scintilla of evidence," *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994), is not enough to create a real controversy regarding material facts. In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (emphasis omitted).

Additionally, because Plaintiff is proceeding *in forma pauperis* in this action, his complaint is subject to *sua sponte* dismissal under 28 U.S.C. § 1915(e)(2), which mandates dismissal "at any time" if the court determines that the action "fails to state a claim on which relief may be granted" or "is frivolous or malicious." *See also Ali v. Higgs,* 892 F.2d 438, 440 (5th Cir. 1990) (recognizing the court's authority "to test the proceeding" and deeming

appropriate *sua sponte* evaluation of the merit of the asserted claim).  "A complaint is frivolous if it lacks an arguable basis in law or in fact."  *Biliski v. Harborth*, 55 F.3d 160, 162 (5th Cir. 1995).  This court is "vested with especially broad discretion in making the determination of whether an IFP proceeding is frivolous."  *Green v. McKaskle*, 788 F.2d 1116, 1119 (5th Cir. 1986).

ANALYSIS

Plaintiff's claims are before the court pursuant to 42 U.S.C. § 1983.  However, Section 1983 "neither provides a general remedy for the alleged torts of state officials nor opens the federal courthouse doors to relieve the complaints of all who suffer injury at the hands of the state or its officers."  *White v. Thomas*, 660 F.2d 680, 683 (5th Cir.1981).  Rather, "[i]t affords a remedy only to those who suffer, as a result of state action, deprivation of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States."  *White*, 660 F.2d at 683 (quoting 42 U.S.C. § 1983).

It is well-settled that Section 1983 does not "create supervisory or *respondeat superior* liability."  *Oliver v. Scott,* 276 F.3d 736, 742 & n.6 (5th Cir. 2002); *see also Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987) (citations omitted) ("Under § 1983, supervisory officials cannot be held liable for the actions of subordinates under any theory of vicarious liability.").  "To state a cause of action under § 1983, the plaintiff must allege facts reflecting the defendants' participation in the alleged wrong, specifying the personal involvement of each defendant."  *Jolly v. Klein*, 923 F. Supp. 931, 943 (S.D. Tex. 1996) (citing *Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992)).  Thus, supervisory prison officials may be held liable for a Section 1983 violation only if they either were personally involved in the constitutional deprivation or if there is a "sufficient causal connection between the supervisor's wrongful conduct and the

constitutional violation." *Thompkins*, 828 F.2d at 304.

Moreover, "[f]or purposes of liability, a suit against a public official in his official capacity is in effect a suit against the local government entity he represents." *Mairena v. Foti*, 816 F.2d 1061, 1064 (5th Cir. 1987) (citations omitted). The Supreme Court has held that in order for a local governmental entity to have liability under Section 1983, a plaintiff must prove that a policy, custom or practice of that local government entity was the "moving force" behind the constitutional violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

## Denial of Adequate Medical Care

"Prison officials violate the constitutional proscription against cruel and unusual punishment when they are deliberately indifferent to a prisoner's serious medical needs, as doing so constitutes unnecessary and wanton infliction of pain." *Davidson v. Texas Dep't of Criminal Justice*, 91 Fed. Appx. 963, 964 (5th Cir. 2004) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). Deliberate indifference "is an extremely high standard to meet." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)). The test for establishing deliberate indifference is "one of subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A prison official may not be held liable under this standard pursuant to Section 1983 unless the plaintiff alleges facts which, if true, would establish that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 838. Plaintiff must "submit evidence that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any other similar conduct that would clearly evince a wanton disregard for any serious medical

needs." *Davidson*, 91 Fed. Appx. at 965 (quoting *Domino*, 239 F.3d at 756). "[D]elay in medical

care can only constitute an Eighth Amendment violation if there has been deliberate indifference,

which results in substantial harm." *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

Negligent conduct by prison officials does not rise to the level of a constitutional

violation. *Daniels v. Williams*, 474 U.S. 327, 333-34 (1986). The Plaintiff is not entitled to the

"best" medical treatment available. *McMahon v. Beard*, 583 F.2d 172, 174 (5th Cir. 1978); *Irby

v. Cole*, No. 4:03cv141-WHB-JCS, 2006 WL 2827551, at *7 (S.D. Miss. Sept. 25, 2006).

Further, a prisoner's "disagreement with medical treatment does not state a claim for Eighth

Amendment indifference to medical needs." *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir.

2001).

### Dr. John Bearry

Plaintiff alleges that Dr. Bearry, former medical director at Parchman, refused a consult

order directed by Dr. Moram and refused to transfer him to another unit. Plaintiff also claims

that Dr. Bearry lied under oath when he testified during an unrelated bond hearing that

Parchman's medical services were "on par" with outside hospitals.[9]

In his sworn interrogatories responses, Dr. Bearry states that he does not recall, and the

medical records do not indicate that he refused a consultation for Plaintiff. Further, he states that

he did defer Plaintiff's request to be transferred back to Unit 29 on a few occasions due to his

medical condition.[10]

Plaintiff's allegations against Dr. Bearry fail to amount to a constitutional violation.

---

[9] *See* Complaint [1] at ¶¶ 42, 47.

[10] *See* Ex. 7 to Motion [216-13].

Plaintiff has failed to show that Dr. Bearry was deliberately indifferent to a serious medical need. *See Davidson*, 91 Fed. Appx. at 964. Moreover, Plaintiff has no constitutional right to be incarcerated at a certain facility. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Steward v. Kelly*, No. 06-cv-1-P-B, 2006 WL 3825236, at *4 (N.D. Miss. Dec. 27, 2006); *Ready v. Fleming*, No. 4:02-cv-056-Y, 2002 WL 1610584, at *3 (N.D. Tex. July 19, 2002). Further, Plaintiff states in his Response [235] that he "is willing to allow this claim to drop." *See* Response [235] at 16.

Likewise, Plaintiff's allegation that Dr. Bearry lied under oath regarding Parchman's medical services fails to amount to a constitutional violation. Plaintiff fails to show how he was injured by such a statement, even if false. *See McMahon*, 583 F.2d at 174; *Irby*, 2006 WL 2827551, at *7 (stating that prisoner plaintiffs were not entitled to the "best" medical treatment available). Further, Plaintiff states in his Response [235] that he moved to drop this claim long ago. *See* Response [235] at 16.

In his Response [235], Plaintiff also claims his complaint includes a claim against Dr. Bearry for violation of the ADA and violation of his privacy rights, and refers the court to paragraph 209 of his complaint. After a review of the pleadings, the court finds that these claims were not alleged against Dr. Bearry in Plaintiff's Complaint or his Amended Complaints, and were not discussed during his *Spears* hearing. Accordingly, no such claims are pending against Dr. Bearry and will not be addressed herein.[11]

Based on the foregoing, Dr. Bearry is entitled to judgment as a matter of law.

---

[11]Even assuming Plaintiff did make such claims against Dr. Bearry, such claims would be dismissed for the same reasons that similar claims against the other CMS Defendants should be dismissed, as discussed below.

*Dr. Rochel Walker*

Plaintiff alleges that Dr. Rochel Walker, Medical Director at CMCF,[12] was deliberately indifferent to his serious medical needs.[13]  Specifically, he claims he saw Dr. Walker on May 23, 2005, for the physical examination for his reclassification process.  He claims Dr. Walker refused his pleas for a shower wheelchair, was rude to him, and implied he was faking his condition.  He also claims that he later saw Dr. Walker regarding a sore on his heel caused by his leg brace.  He complains that Dr. Walker only gave him ointment for the sore.  He claims she again refused him a shower wheelchair, and "made no notion of ordering more of the external catheters he required."[14]  In his Amended Complaint [5], he claims that during his intake health screening at CMCF, Dr. Walker failed to take time to fully examine him and failed to follow or consult orders from previous physicians.[15]

Plaintiff has failed to show that Dr. Walker was deliberately indifferent to a serious medical need.  *See Davidson*, 91 Fed. Appx. at 964. The record reflects that Dr. Walker performed a physical examination of Plaintiff on May 23, 2005.[16]  The fact that this examination may not have been as thorough as Plaintiff would have liked does not amount to a constitutional violation.[17]  *See McMahon*, 583 F.2d at 174; *Irby*, 2006 WL 2827551, at *7 (stating that prisoner

---

[12]Dr. Walker became the Medical Director at CMCF on July 1, 2006.  *See* Ex. 10 to Motion [216-16].  Dr. Walker was previously a staff physician at CMCF.

[13]Plaintiff's claims against Dr. Walker under the ADA are discussed below.

[14]*See* Complaint [1] at 7-8.

[15]*See* Amended Complaint [5] at 5.

[16]*See* Ex. 10 to Motion [216-16].

[17]For example, Plaintiff complains that Dr. Walker did not use a tongue depressor or any other instrument to look in his ears and nose.  *See* Response [235] at 8.

plaintiffs were not entitled to the "best" medical treatment available); *Daniels*, 474 U.S. at 333-34 (holding that negligent conduct by prison officials does not rise to the level of a constitutional violation).

Further, the record reflects that Dr. Walker ordered urinary bags for Plaintiff, and ordered a urinalysis with culture.[18] Plaintiff concedes that Dr. Walker ordered him urinary leg bags and noted he had a condom catheter secondary to paraplegia,[19] but complains she would not listen as to the type of catheters he needed. He also claims he never received condom catheters while at CMCF from May 19, 2005 to June 3, 2005.[20] Plaintiff's disagreement with the type of urinary supplies ordered by Dr. Walker does not amount to a constitutional violation. *See Norton*, 122 F.3d at 292 (holding that a prisoner's "disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs"). Moreover, Dr. Walker noted that he had a condom catheter secondary to paraplegia, and apparently did not see the need to order new condom catheters at that time. Even assuming Dr. Walker should have ordered Plaintiff condom catheters at that time, this constitutes negligence at best, and does not meet the high standard of deliberate indifference. *See Gobert*, 463 F.3d at 346; *Daniels*, 474 U.S. at 333-34.

Likewise, Plaintiff's disagreement with Dr. Walker's method of examination and her treatment of his sore on his heal does not rise to the level of a constitutional violation. *See Norton*, 122 F.3d at 292. Even assuming Plaintiff's receipt of the antibiotic ointment ordered by Dr. Walker was delayed, Plaintiff has failed to show such delay was due to Dr. Walker's

---

[18]*Id.*

[19]*Id.*

[20]Plaintiff was transferred to Parchman on June 3, 2005. *See* Complaint [1] at 7-11.

deliberate indifference, and has failed to show that he suffered substantial harm as a result of the delay. *See Mendoza*, 989 F.2d at 195 ("[D]elay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm.").

Finally Plaintiff's claim that Dr. Walker ignored his requests for a shower wheelchair on two occasions in May 2005 does not establish deliberate indifference to a serious medical need.[21] In her sworn interrogatory responses, Dr. Walker denies that she failed or refused to prescribe Plaintiff with a shower wheelchair.[22] Even if Dr. Walker did ignore Plaintiff's request for a shower wheelchair in May of 2005, this constitutes negligence, which is not actionable under the constitution. *See Daniels*, 474 U.S. at 333-34. Moreover, the medical records reflect that Dr. Blackstone ordered Plaintiff an assisted bath and a shower wheelchair on May 27, 2005,[23] and Plaintiff was transferred to Parchman on June 3, 2005.[24] At most, Plaintiff endured a week in between baths while at CMCF. While this may have been unpleasant or uncomfortable, it does not rise to the level of a constitutional violation. *But cf. Bradley v. Puckett*, 157 F.3d 1022, 1025-26 (5th Cir. 1998) (holding that prisoner stated cognizable claim for cruel and unusual punishment where he was prevented from bathing for two months, was forced to bathe in toilet water, and developed a fungal infection). While Plaintiff alleges that the hygiene issue had possibly caused a bladder infection, Plaintiff's records reflect a history of urinary tract infections

---

[21]This allegation is also discussed below under the ADA claims.

[22]*See* Ex. 10 to Motion [216-16].

[23]*Id.* at 19, 31.

[24]*Id.* at 32.

("UTIs") due to his condition.[25]

Plaintiff disputes the allegations made in the CMS Defendants' Memorandum [217] and disagrees with Dr. Walker's interpretation of his medical records; however, his Response [235] fails to create a genuine issue of material fact as to whether Dr. Walker was deliberately indifferent to his serious medical needs.

Based on the foregoing, Dr. Walker is entitled to judgment as a matter of law on Plaintiff's medical claims.

### Dr. Risher Watts

Plaintiff alleges that Dr. Risher Watts, a former staff physician at SMCI,[26] was deliberately indifferent to his serious medical needs.[27]  Specifically, he claims he saw Dr. Watts on July 20, 2006 and July 24, 2006 for a UTI. Plaintiff claims that Dr. Watts failed to admit him to the infirmary even though he allegedly admitted on July 24, 2006, that his infection could only be treated with intravenous ("IV") antibiotics.  Plaintiff claims he was not admitted to the infirmary for proper treatment until August 4, 2006, after a phone call to Mike Hatten, Health Services Administrator at SMCI, was made by his father.[28]

Plaintiff also alleges that he saw Dr. Watts on October 16, 2006, for a facial infection. He claims Dr. Watts refused to culture the infection, and merely prescribed him Bactrim and Clindamycin.  Dr. Watts also allegedly denied that pseudomonas was a danger to Plaintiff and

---

[25]*See* Ex. 10 to Motion [216-16].

[26]Dr. Watts is now retired.  *See* Ex. 11 to Motion [216-17].

[27]Plaintiff also alleges a claim against Dr. Watts for violation of his privacy, which is discussed below.

[28]*See* Complaint [1] at 18-19.

12

indicated he would have it the rest of his life.[29]

The record reflects that Plaintiff saw Dr. Watts on July 20, 2006, claiming he had a UTI because his urine was cloudy. Dr. Watts's sworn interrogatory responses state that Plaintiff denied having any other symptoms related to a UTI and showed no abnormalities on physical examination. Dr. Watts diagnosed Plaintiff with pseudomonas, "a very common bacteria found in the perineum and the urethra of men with spinal cord injuries [which] does not require treatment with an antibiotic unless the patient exhibits signs of a [UTI]."[30] Plaintiff was admitted to the infirmary under the care of Dr. Trinca on August 4, 2006, for administration of IV antibiotics.[31]

The record does not show that Dr. Watts denied Plaintiff treatment on July 20 or 24, 2006. Rather, it appears that Plaintiff disagrees with Dr. Watts's treatment and/or his decision not to admit him to the infirmary, which does not amount to a constitutional violation. *See Norton*, 122 F.3d at 292. Even assuming Dr. Watts should have admitted Plaintiff to the infirmary on July 20, 2006, this constitutes negligence at best, and does not meet the high standard of deliberate indifference. *See Gobert*, 463 F.3d at 346; *Daniels*, 474 U.S. at 333-34. Moreover, to the extent Plaintiff claims Dr. Watts caused a delay of approximately two weeks for the IV antibiotic treatment, such delay does not violate the constitution, as Plaintiff has failed to allege that the delay caused him substantial harm. *See Mendoza*, 989 F.2d at 195.

Regarding the treatment for Plaintiff's facial infection, the record reflects that he saw Dr.

---

[29]*Id*. at 22.

[30]*See* Ex. 11 to Motion [216-17] at 4.

[31]*See* Ex. 11 to Motion [216-17].

Watts on October 16, 2006. After examining Plaintiff, Dr. Watts noted a rash on his scalp, forehead, and chin. Dr. Watts's sworn interrogatory responses indicate that a culture was not taken because it was not medically indicated or necessary. Dr. Watts treated Plaintiff for a presumed staph infection, and prescribed him Cleocin 300 mg. three times per day for one week, and Bactrim DS twice daily for ten days.[32] Dr. Watts advised Plaintiff to return in three weeks for a follow-up visit.[33] Accordingly, the record does not reflect that Dr. Watts denied Plaintiff treatment.[34] Rather, Plaintiff disagrees with the medical treatment provided by Dr. Watts, which does not amount to a constitutional violation. *See Norton*, 122 F.3d at 292. Notably, Plaintiff admits he saw "moderate improvement" after taking the medication prescribed by Dr. Watts.[35]

Plaintiff's allegation that during the October 16, 2006, visit Dr. Watts advised him that pseudomonas was inconsequential and that he would have it the rest of his life fails to amount to a constitutional violation. As previously stated, Dr. Watts described pseudomonas as "a very common bacteria found in the perineum and the urethra of men with spinal cord injuries [which]

---

[32]*See* Ex. 11 to Motion [216-17].

[33]Plaintiff did return on November 6, 2006, approximately three weeks later, for the follow-up appointment ordered by Dr. Watts; Plaintiff did not see Dr. Watts, but saw Dr. Woodall and was prescribed Bactrim and Cleocin. *See* Ex. 11 to Motion [216-17] at 38.

[34]Indeed, the record reflects that on his October 16, 2006 visit, Dr. Watts ordered Plaintiff tubing for his external catheters, specifically directing that Plaintiff receive the correct type of tubing for his catheters. *See* Ex. 11 to Motion [216-17]. In his Response [235], Plaintiff claims he did not receive the tubing until October 20, 2006, after his father made a phone call on his behalf. This is irrelevant to the instant motion, as Plaintiff made no claims against Dr. Watts regarding tubing or catheters.

Dr. Watts also requested a consultation for the repair of Plaintiff's left leg brace during the October 16, 2006 visit. *See* Ex. 11 to Motion [216-17].

[35]*See* Complaint [1] at 22.

does not require treatment with an antibiotic unless the patient exhibits signs of a [UTI]."[36]

While Plaintiff disputes the allegations made in the CMS Defendants' Memorandum [217] and claims that some of the statements are misleading, his Response [235] fails to create a genuine issue of material fact as to whether Dr. Watts was deliberately indifferent to his serious medical needs.

Based on the foregoing, Dr. Watts is entitled to judgment as a matter of law on Plaintiff's medical claims.

### Dr. Patrick Arnold

Plaintiff alleges that Dr. Patrick Arnold, a former staff physician at SMCI, was deliberately indifferent to his serious medical needs.[37] Specifically, he claims that he saw Dr. Arnold on October 4, 2005, upon his arrival at SMCI. He claims Dr. Arnold exhibited an attitude of indifference and unconcern when he showed him a pressure sore on his heel from his leg brace, and when he requested a shower wheelchair and external catheters. After looking at Plaintiff's urinary supplies he brought with him, Dr. Arnold allegedly asked Plaintiff "how about we (medical) give you one of these (external catheters) a week and one leg bag a month."[38] Plaintiff then advised Dr. Arnold that he needed one external catheter a day to prevent UTIs. Dr. Arnold allegedly laughed at Plaintiff's explanation. Dr. Arnold then allegedly confiscated Plaintiff's latex tubing used to connect his external catheter to his leg bag, and told him he could not have it. After Dr. Arnold left, Nurse Hillman allegedly assured him that there was a shower

---

[36]*See* Ex. 11 to Motion [216-17] at 4.

[37]Plaintiff's claims against Dr. Arnold under the ADA are discussed below.

[38]*See* Complaint [1] at 12.

wheelchair in every building.[39]

Plaintiff alleges that he saw Dr. Arnold in April 2006, regarding a sore to his left heel from his leg brace. Plaintiff alleges Dr. Arnold was indifferent to his sore and claims Dr. Arnold is inept and unqualified. Plaintiff states that he was taken to Hanger Prosthetics for a brace adjustment two weeks later.[40]

Plaintiff alleges that he saw Dr. Arnold on July 3, 2006, and that he prescribed Bactrim for his continuing UTI, even though his records demonstrated that it had not worked in the past.

The record reflects that Dr. Arnold examined Plaintiff on October 4, 2005, upon his arrival at SMCI. Dr. Arnold noted Plaintiff's spinal cord injury, his neurogenic bladder and his paralysis from the knees down. Dr. Arnold noted an ulcer on Plaintiff's left heel. The records indicate that Dr. Arnold ordered a bottom bunk for Plaintiff for medical reasons. Regarding the sore on Plaintiff's heel, Dr. Arnold ordered a sitz bath[41] daily for two weeks, ordered that his wound be dressed daily, and that triple antibiotic ointment be applied daily. Dr. Arnold also prescribed Keflex for two weeks. Dr. Arnold further ordered a consult to have Plaintiff's leg brace adjusted as not to cause pressure sores.[42]

The record further reflects that Dr. Arnold ordered Plaintiff supplies for condom catheter changes and leg bag changes: 1 leg bag per month for six months and 1 condom catheter per day

---

[39]See Complaint [1] at 12.

[40]See Complaint [1] at 17.

[41]A sitz bath is a "bath in which the patient sits in the tub, the hips and buttocks being immersed . . . ." *Dorland's Illustrated Medical Dictionary* 200 (29th ed.).

[42]See Ex. 4 to Motion [216-5] at 29, 39; [216-6] at 63; [216-8] at 21.

for six months.[43]  On October 4, 2005, Dr. Arnold also ordered Plaintiff 10 condom catheters, one leg bag, and one general urine drainage bag, which Plaintiff received that day.[44]

Plaintiff's claim regarding Dr. Arnold's alleged attitude of indifference and unconcern for his request for a  shower wheelchair does not establish deliberate indifference.  As stated above, Dr. Arnold ordered a bottom bunk for Plaintiff for medical reasons, and ordered him a sitz bath daily for two weeks.[45]  Thus, the record establishes that Dr. Arnold was not deliberately indifferent to a serious medical need.  Even if Dr. Arnold did ignore Plaintiff's request for a shower wheelchair on October 4, 2005, this constitutes negligence, which is not actionable under the constitution.  *See Daniels*, 474 U.S. at 333-34.  Moreover, Plaintiff alleges that Nurse Hillman assured him that there was a shower wheelchair in every building.[46]  While Plaintiff claims there were no shower chairs in building A-1, he states that he did intermittently receive a shower chair.[47]  In addition, Plaintiff fails to allege how he was injured by Dr. Arnold's alleged denial.

The record reflects that Plaintiff saw Dr. Arnold on April 3, 2006, regarding a sore on his left heel from his leg brace.  Dr. Arnold noted that he had a hard area on his heel, but that there was no drainage.  Dr. Arnold ordered a consultation, which was approved on April 7, 2006, and

---

[43]*See* Ex. 4 to Motion [216-5] at 29; [216-6] at 63. Dr. Arnold noted that Plaintiff currently had a 180-day supply of leg bags and catheters.  *Id.*  Plaintiff disputes this, and claims that Dr. Arnold changed the original number "60" to "180."  *See* Ex. 8 to Response [235-3] at 43, line 6. This dispute does not create a genuine issue of material fact as to Plaintiff's claim for deliberate indifference against Dr. Arnold.  The record reflects that Dr. Arnold provided Plaintiff with urinary supplies on October 4, 2005, and ordered him future supplies as noted above.

[44]*See* Ex. 4 to Motion [216-6] at 63; [216-7] at 18.

[45]*See* Ex. 4 to Motion [216-5] at 29; [216-6] at 63.

[46]*See* Complaint [1] at 12.

[47]*See* Complaint [1] at 13.

an appointment with Hanger Prosthetics was scheduled for April 21, 2006.[48]  Plaintiff visited

Hanger as scheduled, and adjustments to his brace were made.[49]

Regarding his July 3, 2006, visit with Dr. Arnold, the record reflects that a urinalysis was

performed and Plaintiff was prescribed Bactrim twice a day for seven days.[50]

In his Response [235], Plaintiff dissects each sentence of Defendants' Memorandum

[217], and states whether or not he agrees with it.  He also complains that certain of Dr. Arnold's

orders were never followed or carried out.  However, Dr. Arnold's failure to ensure his orders

were followed does not establish that Dr. Arnold was deliberately indifferent to a serious

medical need.  *See Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999) (stating that doctor's

failure to ensure his orders were carried out constituted negligence and not deliberate

indifference).

Plaintiff has failed to show that Dr. Arnold was deliberately indifferent to a serious

medical need.  *See Davidson*, 91 Fed. Appx. at 964.  The record reflects that Plaintiff was treated

by Dr. Arnold for various ailments on the dates at issue. Plaintiff was not denied medical

treatment by Dr. Arnold; rather, he disagrees with the medical treatment he received.  *See*

*Norton*, 122 F.3d at 292.  Plaintiff alleges that Dr. Arnold was inept, incompetent, and

unqualified.  Even if Dr. Arnold was negligent in his treatment of Plaintiff, this does not rise to

the level of a constitutional treatment.  *See Daniels*, 474 U.S. at 333-34; *see also Irby*, 2006 WL

2827551, at *7 (stating that prisoner plaintiffs were not entitled to the "best" medical treatment

---

[48]Dr. Arnold noted that Plaintiff had recently been seen at Hanger for a readjustment of his braces on February 13, 2006.  *See* Ex. 4 to Motion [216-5] at 42-48.

[49]*See* Ex. 4 to Motion [216-5] at 42-51.

[50]*See* Ex. 4 to Motion [216-5] at 46; [216-10] at 35.

available).

Based on the foregoing, Dr. Arnold is entitled to judgment as a matter of law on Plaintiff's medical claims.

### *Bobby King*

Plaintiff alleges that Bobby King, former administrator of the SMCI medical department,[51] was deliberately indifferent to his serious medical needs. Specifically, Plaintiff claims that his brother's friend, Deputy Rhondalyn Rogers, called Mr. King in November and December of 2005, and January of 2006, regarding the need for Plaintiff's medical supplies. Plaintiff claims, "Ms. Rogers received no fruition, only lip service."[52]

Mr. King's sworn interrogatory responses reflect that he supervised the administration of the medical department at SMCI. He stated that he was not a medical provider and did not provide medical services or treatment to inmates at SMCI.[53] Mr. King stated that he did not determine Plaintiff's needs for urinary or other medical supplies; the physicians at SMCI made that determination. Mr. King stated that he does recall receiving one call from Ms. Rogers, but does not recall the date or the details. He believes Ms. Rogers asked him to check on Plaintiff's medical needs and he agreed to do so. Mr. King's sworn responses indicate that he never denied Plaintiff medical supplies and has no knowledge of anyone who ever did so.[54]

The record establishes that Mr. King at least attempted to remedy Plaintiff's needs for

---

[51]Bobby King was employed by CMS as the health services administrator at SMCI from July 1, 2003 to July 30, 2006. *See* Ex. 9 to Motion [216-15].

[52]*See* Complaint [1] at ¶ 84.

[53]*See* Ex. 9 to Motion [216-15].

[54]*Id.*

medical supplies, as discussed above. Indeed, Plaintiff's own allegations establish Mr. King's efforts. In his Response [235], Plaintiff alleges that Mr. King had a meeting with Ms. Washington, the supply clerk, about ordering Plaintiff's medical supplies. Ms. Washington allegedly refused to order the type of catheters requested by Plaintiff because they were not on the approved vendors list. The fact that Mr. King's efforts may have been ineffective does not establish that he was deliberately indifferent to Plaintiff's serious medical needs. *See Gobert*, 463 F.3d at 346; *Daniels*, 474 U.S. at 333-34. Indeed, Mr. King's sworn statements establish that he did not determine the type, quantity, or need for Plaintiff's medical supplies or the need to adjust Plaintiff's leg braces. Rather, he relied on the physicians to make those determinations. The medical records attached to Mr. King's sworn interrogatory responses demonstrate that Plaintiff was provided with urinary supplies, and was referred to Hanger Prosthetics on several occasions to have his leg braces adjusted, as outlined in Defendants' Memorandum.[55]

Plaintiff has failed to show that Mr. King was deliberately indifferent to a serious medical need. *See Davidson*, 91 Fed. Appx. at 964. There is no supervisory or respondeat superior liability under Section 1983. *See Oliver,* 276 F.3d at 742 & n.6. Accordingly, Mr. King cannot be held responsible for Ms. Washington's, or any other SMCI employee's failure to timely order the correct type and quantity of Plaintiff's urinary supplies. *See Thompkins*, 828 F.2d at 304 (citations omitted) ("Under § 1983, supervisory officials cannot be held liable for the actions of subordinates under any theory of vicarious liability."). Likewise, Mr. King cannot be held liable for the physician's failure to timely refer Plaintiff to an outside provider for the adjustment of his leg braces. *Id.*

Plaintiff has failed to demonstrate that Bobby King was personally involved in the

---

[55]*See* Memorandum [217] at 18-20; *See* Ex. 9 to Motion [216-15].

alleged denial of adequate medical supplies or treatment, or that Mr. King implemented an unconstitutional policy that causally resulted in an injury to Plaintiff. *See Johnson*, 2002 WL 243359, at *1; *Stewart v. Murphy*, 174 F.23d 530, 536 (5th Cir. 1999) (holding that medical director at Parchman was not deliberately indifferent to plaintiff's serious medical needs, where director was not one of plaintiff's treating physicians and had limited contact with plaintiff); *Hailey v. Savers*, 240 Fed. Appx. 670, 672 (5th Cir. 2007) (affirming dismissal of prison medical administrator because plaintiff "failed to allege specific facts to demonstrate that [administrator] had personal involvement in placing [plaintiff] in a job assignment that posed a substantial risk of harm or that [administrator] implemented policies to physically harm [plaintiff]"). Indeed, the only evidence of Mr. King's limited involvement with Plaintiff's medical treatment is an attempt to ensure he received adequate medical supplies. Even if Mr. King was negligent in carrying out his duties, this does not meet the high standard of deliberate indifference. *See Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995) (holding that because the warden and medical treatment director "lacked medical expertise, they cannot be liable for the medical staff's diagnostic decision not to refer [plaintiff] to a doctor to treat his shoulder injury"); *Cuoco v. Moritsugu*, 222 F.3d 99, 111 (2nd Cir. 2000) (holding that the failure of the non-doctor defendants– Warden and Health Services Administrator– to intervene in the medical treatment of an inmate was not objectively unreasonable, even if it were wrongful).

Based on the foregoing, Plaintiff has failed to establish the existence of a genuine issue of material fact as to whether Defendant Bobby King was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment.

### CMS

Plaintiff claims that CMS failed to provide adequately trained staff and an adequate

policy to carry out reasonable medical treatment for him.[56]  Specifically, he claims the following

violations by CMS: inadequate and untimely receipt of medical supplies, inadequate treatment

for infectious sores, inadequate medical privacy, inadequate treatment for disabled inmates such

as Plaintiff, inadequate scheduling of follow-up appointments, and understaffing.[57]  *See*

Complaint [1] at ¶ 209.

      As stated above, there is no respondeat superior liability under Section 1983.  *See supra*,

*Oliver,* 276 F.3d at 742 & n.6; *see also Powell v. Shopco Laurel Co.*, 678 F.2d 504, 505-06

(1982) (holding that plaintiff could not recover against private state-employed company under

Section 1983 based on theory of respondeat superior).  Further, Plaintiff has failed to

demonstrate that CMS affirmatively participated in any constitutional deprivation or

implemented an unconstitutional policy.  *See Mouille v. City of Live Oak, Tex.*, 977 F.2d 924,

929 (5th Cir. 1992).  Plaintiff's disagreement with the medical treatment provided does not

amount to a constitutional violation.  *See Norton*, 122 F.3d at 292.  The records reflect that

Plaintiff was consistently treated for his recurring UTIs, facial lesions, foot sores, and other

ailments.[58]

      Plaintiff's opposition [235] fails to establish any genuine issues of material fact regarding

his claims for deliberate indifference against CMS.  CMS cannot be held liable for the acts of its

physicians, its supply clerks, or any other employees for providing inadequate medical treatment,

---

[56]Based on the court record, Wexford assumed the medical contract with the MDOC on July 1, 2006.  *See* Memorandum [198] at 1; Response [224] at 2.  Prior to July 1, 2006, CMS was the contract medical provider for the MDOC.

[57]Plaintiff's ADA and privacy claims against CMS are addressed below.

[58]*See* Exs. 4-5 Motion [216].

failing to order adequate supplies, delaying the receipt of prescribed medications and/or delaying the adjustment of his prosthetics. *See supra*, *Oliver,* 276 F.3d at 742 & n.6.

Moreover, Plaintiff's allegations against CMS regarding understaffing fail to amount to a constitutional violation. *See Moneer v. Harrison County Detention Ctr.*, No. 1:07cv1060LG-JMR, 2008 WL 4450255, at *5 (S.D. Miss. Sept. 29, 2008) (holding that allegations of understaffing and inadequate security features at facility were insufficient to establish deliberate indifference; allegations established negligence at most); *Williams v. Holder*, No. GC90-186-SO, 1995 WL 1945553, at *8 (N.D. Miss. Oct. 25, 1995) ("Evidence of understaffing, without more, is not proof of official policy."); *Hood v. Itawamba County*, 819 F. Supp. 556, 564 (N.D. Miss. 1993).

While Plaintiff may disagree with the medical treatment he was provided, this does not amount to a constitutional violation. *See Norton*, 122 F.3d at 292; *see also McMahon*, 583 F.2d at 174 (holding that prisoners are not entitled to the "best" medical treatment available). Accordingly, CMS is entitled to judgment as a matter of law on Plaintiff's claims for deliberate indifference to his serious medical needs.

**Privacy Violations**

Plaintiff alleges a claim for the violation of his privacy rights against Defendants Dr. Watts, Dr. Arnold, Nurse Ruthie Hall,[59] and CMS.[60] Specifically, he complains that other

[59]In his Response [235], Plaintiff argues that he also alleged ADA claims against Nurse Hall. After a review of the pleadings, the court finds that these claims were not alleged against Nurse Hall in Plaintiff's Complaint or his Amended Complaints, and were not discussed during his *Spears* hearing. Accordingly, no such claims are pending against Nurse Hall and will not be addressed herein.

[60]Plaintiff argues that Defendants did not address his privacy claim against Dr. Arnold in their motion. Plaintiff's allegations for a privacy violation against Dr. Arnold are substantially

inmates waiting in the hallway outside the exam room overheard his conversations with Dr. Watts and Dr. Arnold discussing his UTIs and his required urinary supplies.[61]  Similarly, Plaintiff alleges that Nurse Hall a registered nurse at Parchman allowed other inmates to overhear their conversations discussing his medical condition and needs; that she sits in on all doctor-patient meetings, including a meeting with Dr. Moram; and that she allowed an inmate worker to dispense Plaintiff's medical supplies.[62]

"A prisoner has no clearly recognized constitutional right in the privacy of his medical records, particularly not in the Fifth Circuit."  *Wells v. Pinion*, No.  07-6844, 2008 WL 2185329, at *6 (E.D. La. May 20, 2008) (rejecting inmate's claim for violation of privacy rights based on loss of his medical records by prison staff); *see also Barnes v. Brownlow*, No. 6:08cv194, 2008 WL 2704868, at *4 (E.D. Tex. July 7, 2008) (dismissing right to privacy claim where prisoner complained that nurse made him announce his medical problem in front of other prisoners); *McClain v. Wilkinson*, No. 07-2190, 2008 WL 1860203, at *9 (W.D. La. Apr. 4, 2008) (holding that prisoner failed to state constitutional claim for violation of his right to privacy based on allegation that jail nurse read his medical records aloud to other inmates and staff).

Even where courts have recognized such a right to privacy, it has been only in the very limited context of either HIV-positive or transsexual status.  *Wells*, 2008 WL 2185329, at *7 (citing *Doe v. Southeastern Pa. Transp. Auth. (SEPTA)*, 72 F.3d 1133, 1140 (3d Cir. 1995); *Powell v. Schriver*, 175 F.3d 107, 111-12 (2d Cir. 1999)).  Other courts have held that prisoners

---

similar to the allegations made against Dr. Watts, Nurse Hall and CMS, which are addressed in Defendants' motion.  Accordingly, the court will address the claims against Dr. Arnold under 28 U.S.C. § 1915(e)(2). *See supra, Ali v. Higgs,* 892 F.2d 438, 440 (5th Cir. 1990).

[61]*See* Complaint [1] at 12, 18-19.

[62]*See* Complaint [1] at 10-11.

do not have a privacy interest in other types of medical conditions "which, even though potentially embarrassing, are not of the "'excrutiatingly [sic] private and intimate nature' of HIV and transsexualism." *Id.* (citing *Rodriguez v. Ames*, 287 F. Supp. 2d 213, 220 (W.D. N.Y. 2003) (no privacy interest in diagnosis of proctitis, an inflammation of the rectal tissue and hemorrhoids); *Webb v. Goldstein*, 117 F. Supp. 2d 289, 298 (S.D. N.Y. 2000) (no privacy right regarding various genital conditions)).

In the instant case, Plaintiff has not alleged that he has "any serious or extremely sensitive medical condition, such as HIV, that might entitle him to the very limited constitutional protection recognized in two circuits, but not the Fifth Circuit." *Walker*, 2006 WL 1997635, at *5. Accordingly, the court finds that Plaintiff has failed to establish a constitutional claim for violation of his right to privacy.

Moreover, regarding Nurse Hall's presence during Plaintiff's examinations, Nurse Hall's sworn interrogatory responses reflect that she is present for inmates' exams when directed by the treating physician. She stated that she transcribes and executes the physician's orders and instructions. Nurse Hall states that she has never discussed information about Plaintiff's medical condition or treatment with anyone other than medical personnel.[63] In his Response [235], Plaintiff states he would allow this claim to drop if Dr. Moram did in fact direct Nurse Hall to be present.[64]

Even assuming *arguendo* that Plaintiff did state a claim for violation of his privacy rights, his claim for monetary damages is barred by the physical injury requirement of the Prison

---

[63]*See* Ex. 8 to Motion [216-14].

[64]*See* Response [235] at 17.

Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997, *et seq.* Section 1997e(e) of the PLRA

provides that "no federal civil action may be brought by a prisoner confined in a jail, prison or

other correctional facility, for mental or emotional injuries suffered while in custody without a

prior showing of physical injury." Plaintiff does not allege to have suffered a physical injury as

a result of the alleged privacy violation. Thus, for this reason as well, Plaintiff's claim for

monetary damages for this claim should be dismissed. *See Geiger v. Jowers*, 404 F.3d 371, 375

(5th Cir. 2005) ("Section 1997e(e) applies to all federal civil actions in which a prisoner alleges a

constitutional violation, making compensatory damages for mental or emotional injuries non-

recoverable, absent physical injury."); *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999)

(PLRA requires physical injury before a prisoner can recover for psychological damages); *see

also Allen v. Morgan*, 66 Fed. Appx. 526 (5th Cir. Apr. 17, 2003) (*per curiam*) (affirming

dismissal of inmate's privacy claim where inmate did not show that he suffered a specific

physical injury as a result of the alleged privacy violation).[65]

### ADA Violations

Plaintiff has alleged that certain CMS Defendants, including CMS, Dr. Arnold, and Dr.

Walker, violated Title II of the ADA.[66] Specifically, he claims these CMS Defendants failed to

provide adequate accommodations and equipment for disabled inmates and failed to provide him

---

[65]The only other possible federal claim Plaintiff might have is under the Health Insurance
Portability and Accountability Act of 1996 ("HIPAA"), Pub. L. No. 104-191, §§ 261-254, 110
Sta. 1936 (1996), the statute which generally provides for confidentiality of medical records.
However, "HIPAA provides no express or implied private cause of action for its violation and
the district courts have consistently rejected any argument to the contrary, as have the legal
commentators who have examined the statute." *Wells*, 2008 WL 2185329, at *7 (collecting
cases and articles).

[66]Plaintiff did not allege claims for violations of the ADA against Dr. Watts, Dr. Bearry,
Mr. King, or Nurse Hall.

with a shower wheelchair.[67]

The CMS Defendants argue that Plaintiff's ADA claims against them should be dismissed because CMS is not a "public entity" within the meaning of the ADA.[68]

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a **public entity**, or be subjected to discrimination by any such entity." 28 U.S.C. § 12132 (emphasis added). In order to establish a cause of action under Title II of the ADA, Plaintiff must establish:

> (1) that he is a qualified individual within the meaning of the ADA; (2) that he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the **public entity**; and (3) that such exclusion, denial of benefits or discrimination is by reason of his disability.

*Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671-72 (5th Cir. 2004) (emphasis added). The term "public entity" is defined as "(A) any state or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) the National Railroad Passenger Corporation, and any commuter authority . . . ." 28 U.S.C. § 12132.

As a preliminary matter, Plaintiff cannot recover from Dr. Arnold or Dr. Walker in their individual capacities under the ADA. *See Gonzales v. City of Corpus Christi*, No. C.A. C-05-280, 2005 WL 3058168, at *7 (5th Cir. Nov. 9, 2005) (holding that Title II of the ADA does not contemplate holding officers liable in their individual capacities); *Shabazz v. Texas Youth*

---

[67]*See* Complaint [1] at 8, 12, 30; Amended Complaint [5] at 3-5.

[68]*See* Rebuttal [236].

*Comm'n*, 300 F. Supp. 2d 467, 473-74 (N.D. Tex. 2003). Accordingly, Plaintiff's claims against Dr. Walker and Dr. Arnold in their individual capacities should be dismissed.

It is undisputed that state prisons fall within the definition of "public entity" under the ADA. *See Pennsylvania Dep't of Corr. v. Yeskey,* 524 U.S. 206, 210 (1998). However, even assuming Plaintiff meets the other necessary elements to establish a prima facie case against CMS and the doctors in their official capacities for violating Title II of the ADA, he has failed to establish that CMS, an independent contractor with the MDOC, is a "public entity" within the meaning of the ADA. While the court was unable to locate any Fifth Circuit precedent on point, courts in other jurisdictions have specifically found that CMS is not a "public entity" within the meaning of the ADA. *See Cox v. Jackson*, 579 F. Supp. 2d 831, 852-53 (E.D. Mich. 2008) (dismissing ADA claims against CMS; "Defendant CMS is neither a state or local government, nor a department, agency, or instrumentality of the state. A private contractor does not become a 'public entity' under Title II merely be (sic) contracting with a governmental entity to provide governmental services"); *Basat v. Caruso*, No. 07-13332, 2008 WL 4457828, at *15 (E.D. Mich. Sept. 30, 2008) (dismissing plaintiff's ADA claims against CMS and its independent contractor physicians because they were clearly not public entities); *Wynott v. Corr. Med. Servs., Inc.,* No. 08-61-P-S, 2008 WL 2061385, at *1-*2 (D. Me. May 13, 2008); *Pitts v. Hayman*, No. 07-2256 (MLC), 2008 WL 1776568, at *9-10, and n.5 (D. N.J. Apr. 16, 2008).[69] The court finds these

---

[69]The court did locate one consolidated case where the U.S. District Court for the District of New Jersey allowed plaintiff's ADA claim to go forward against CMS as a "public entity" during the screening process. *See Muhammad v. N.J. Dep't of Corr.*, No. 05-04999-JBS, 2006 WL 2385131, at *8 and n.5 (D. N.J. Aug. 14, 2006) (dismissing ADA claims against individual defendants pursuant to 28 U.S.C. § 1915, but allowing the Title II claim to go forward against the state public entities, NJDOC and CMS); *see also See Muhammad v. N.J. Dep't of Corr.*, No. 05-5001 (JBS), 2007 WL 2318480, at *2 (D. N.J. Aug. 9, 2007) (granting individual defendants' motion to dismiss ADA claim, but stating "The ADA claim will be allowed to proceed as against the state public entity defendants, NJDOC and CMS"). However, most recently, the same court,

opinions persuasive.

Because CMS is not a state or local government, an instrumentality of a state or local government, or a commuter authority, the court agrees that CMS is not a "public entity" under Title II of the ADA and the CMS Defendants are entitled to judgment as a matter of law on these claims. Moreover, the ADA does not provide a remedy for medical malpractice or the inadequate treatment of disabled inmates. *See Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) (dismissing prisoner's claim regarding incompetent treatment of his paraplegia, reasoning that the "ADA does not create a remedy for medical malpractice"); *Johnson v. Yates*, No. 1:06-CV-00535-OWW-DLB-P, 2008 WL 544573, at *3 (E.D. Cal. Feb. 26, 2008) (collecting cases); *Lentini v. King*, No. 2:04cv22-KS-MTP, 2007 WL 268750, at *7 (S.D. Miss. Jan. 26, 2007).

CONCLUSION

For the reasons stated above, the court finds that Defendants' Motion for Summary Judgment [216] should be GRANTED. Accordingly,

IT IS, THEREFORE, ORDERED:

1.      That the CMS Defendants' Motion [216] is GRANTED. The CMS Defendants are entitled to judgment as a matter of law on Plaintiff's claims against them. To the extent any claims against the CMS Defendants were not addressed in Defendants' Motion [216], they are dismissed pursuant to 28 U.S.C. § 1915(e)(2) as set forth herein.

---

different judge, specifically held that CMS was not a public entity within the meaning of the ADA. *See supra*, *Pitts v. Hayman*, No. 07-2256 (MLC), 2008 WL 1776568, at *9-10, and n.5 (D. N.J. Apr. 16, 2008).

2.      Accordingly, the CMS Defendants are hereby DISMISSED from this action with

prejudice.

SO ORDERED this the 8th day of June, 2009.

s/ Michael T. Parker
United States Magistrate Judge